UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
)
**YVELON MADELON,** )
)
        Petitioner )
)
   v. )
)
) Case No. 23-cv-11612-DJC
)
**CAROL MICI,** )
)
        Respondent. )
)

## MEMORANDUM AND ORDER

**CASPER, C.J.**                                                                                           **October 28, 2025**

### I.      Introduction

Petitioner Yvelon Madelon ("Madelon") has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("the Petition"). D. 1. For the reasons set forth below, the Court DENIES the Petition.

### II.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a person in state custody may petition a federal court for relief on the grounds that such custody is in violation of the petitioner's constitutional rights, or the laws and treaties of the United States. 28 U.S.C. § 2254(a). For a federal court to grant *habeas* relief, the burden lies with the petitioner to demonstrate that the judgment of the state court, as adjudicated on the merits, was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable

1

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section 2254(d)(1) provides two discrete paths to relief. A state court's judgment is "contrary to" federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The "unreasonable application" clause applies when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Significantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," id. at 410 (emphasis in original), such that a state court's application of the law will not be deemed unreasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision," Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Under Section 2254(d)(2), factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in the light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). In essence, *habeas* relief provides a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (citations and internal quotation marks omitted). Accordingly, AEDPA "mandates highly deferential federal court review of state court holdings." Zuluaga v. Spencer, 585 F.3d 27, 29 (1st

2

Cir. 2009) (citing Williams, 529 U.S. at 403). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" as Section 2254(d) is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 102-03.

### III.     Relevant Factual and Procedural Background

Unless otherwise noted, the following facts are drawn from the Bristol Superior Court's decision denying Madelon's motion for a new trial, D. 16-1 at 9-20, the Massachusetts Appeal Court's decision affirming Madelon's conviction on appeal and the denial of his motion for new trial, D. 16-1 at 4-8, and the state court record, D. 21.

#### A.     The Crime, Police Investigation and Charges

The charges against Madelon arose out of a report made to the Attleboro Police on August 6, 2016. D. 16-1 at 10. That day, the victim's older sister brought the victim to the Attleboro Police station to report that the victim had been sexually assaulted by Madelon, her stepfather. Id. The sister stated that, earlier that day, she discovered the victim's diary in which the victim wrote about incidents of sexual assault by Madelon. Id. at 5. In subsequent conversation, the victim disclosed to her sister that there had been several incidents of sexual assault that had occurred over approximately one year. Id. at 10.

On August 16, 2016, Attleboro Police Detective James Miller ("Miller") attended the victim's forensic interview at the Children's Advocacy Center. Id. During the interview, the victim disclosed several incidents of sexual assault. Id. at 10-11. The victim further stated that, on one occasion, she was in the shower when Madelon entered the bathroom and began recording a video of her with his phone while she was naked. Id. at 11. She also stated that, on several occasions, Madelon took pictures of her while she was in bed in various stages of undress. Id.

On August 24, 2016, Miller submitted an application for a warrant to search Madelon's residence. Id. at 9-10. The search warrant sought "[c]ell phones, all computers, hard drives, laptops, thumb drives or mass storage devices, tablets, CD's or DVD's, all printed pictures that contain evidence of Child Pornography or children in any state of nudity or partial dress; mere evidence or any other evidence of a crime." Id. at 9-10, 32. In Miller's affidavit, he also sought "the subsequent forensic examination, to include a preliminary on-site examination, of any seized electronic device(s) which are believed to contain images or videos that are consistent with Child Pornography." Id. at 11, 38.

In that affidavit, Miller attested to the victim's forensic interview, and that based on the victim's statements, he "believe[d] that the video recorded [of the victim in the shower was] consistent with what [he knows] to be Child Pornography." Id. at 10-11, 37. Miller further attested, "I know that cellular devices (such as smart phones) that have the ability to connect to a WIFI connection or possess data capability to access the internet can transfer material to be stored [on] other devices (such as CD's, DVD's, thumb drives, external hard drives, or on the hard drive of their computer)." Id. at 11, 37.

On August 24, 2016, the Attleboro District Court issued the search warrant, id. at 9, 32, and the Attleboro Police executed the search warrant on Madelon's residence the same day, id. at 10. The Attleboro Police seized several items from Madelon's residence, including three cell phones and a laptop computer. Id. at 11. The Attleboro Police then submitted the phones to Officer Vinciulla ("Vinciulla"), a digital examiner with the Metropolitan Law Enforcement Council, who specialized in computer forensics and extracting information from electronic devices. Id. at 11-12. Vinciulla was able to extract information from only one of the cell phones. Id. at 12 n.2.

4

Through the forensic examination, Vinciulla located "deleted video and photographic evidence of a child in various stages of undress." Id. at 13.

### B. State Court Proceedings

On September 22, 2016, Madelon was indicted on four counts: two counts of indecent assault and battery of a child under age fourteen, one count of assault and battery and one count of statutory rape of a child. D. 21 at 43, 161-68. On November 16, 2017, a grand jury returned an additional charge relating to the same factual incidents for one count of rape of a child aggravated by age. Id. at 43, 143, 169-70. On May 17, 2018, a grand jury returned three additional charges: one count for attempted posing a child under eighteen years of age in the nude, and two counts of committing the act of posing a child in the nude. Id. at 43-44, 171-76.

All of the charges were joined for trial. Id. at 44. The judge dismissed the rape charge stemming from the 2017 indictment prior to trial. Id. at 45; D. 16-1 at 9 n.1. On February 4, 2019, Madelon's trial began. D. 21 at 44. At trial, Vinciulla testified that he received the police reports and search warrant and that he used the documents to narrow his forensic search of Madelon's cell phone to "specific items," namely "video and image evidence," through which he located "deleted video and photographic evidence of a child in various stages of undress." D. 16-1 at 13.

The jury also heard the victim testify. Id. at 12. The victim identified a photo of her sitting on the toilet naked and said that Madelon recorded her. Id. The prosecutor also played video recordings that the victim identified as videos of her taken by Madelon. Id. at 12-13. During his cross-examination, Madelon admitted that he had taken the video of the victim on the toilet, but testified that he had done so to show her mother because he thought the victim's behavior was inappropriate. Id. at 13.

After the close of the Commonwealth's case, the judge allowed the defense's motion for a required finding of not guilty on one count of indecent assault and battery from the 2016 indictment and one count of video depicting covered genitalia from the 2018 indictment. D. 21 at 45; D. 16-1 at 9 n.1. On February 12, 2019, the jury convicted Madelon of indecent assault and battery on a child under the age of fourteen, posing a child in a state of nudity and attempting to pose a child in state of nudity. D. 16-1 at 9. The jury acquitted Madelon of one count of rape of a child and one count of assault and battery. D. 16-1 at 9 n.1; D. 21 at 46. Madelon was sentenced to seven to nine years in state prison and five years of probation with special conditions. D. 21 at 46.

On January 28, 2021, Madelon moved for a new trial, contending, among other things, ineffective assistance of counsel on the grounds that his trial counsel failed to move to suppress as evidence the contents of his cell phone. D. 16-1 at 9, 14; D. 21 at 185-88. On September 8, 2021, the Bristol Superior Court denied the motion for new trial. D. 16-1 at 9-20. On September 22, 2021, Madelon moved for reconsideration of the court's decision. D. 21 at 250-55. The court denied the motion on October 1, 2021. D. 16-1 at 21.

On October 6, 2021, Madelon filed a notice of appeal of the Bristol Superior Court's decisions denying his motion for new trial and motion for reconsideration. D. 21 at 258. On October 13, 2022, the Massachusetts Appeals Court affirmed Madelon's conviction and the Bristol Superior Court's denial of his motion for new trial. D. 16-1 at 4-5. The court analyzed Madelon's motion for new trial, based on his claim of ineffective assistance of counsel, under Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Id. As the court stated, to succeed on a claim of ineffective assistance of counsel under Saferian, a defendant must show that "'there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and that this behavior

6

"'likely deprived the defendant of an otherwise available, substantial ground for defense.'" D. 16-1 at 4 (quoting Saferian, 366 Mass. at 96)).

In its analysis, the court acknowledged that a warrant is required to search a digital device and concurrently recognized that a single warrant can both authorize the seizure of a digital device and the search of its contents. Id. at 4-5. Reading the warrant and affidavit in a "realistic and commonsense manner," the court concluded that "[r]eading the warrant to permit the police only to seize the physical cell phone without searching its contents would defy both the purpose of the authorized search and common sense." Id. at 5 (citations and internal quotation marks omitted). The court disagreed with Madelon's contention that the warrant was not adequately particular, noting that a search warrant need not "'identify specific locations or files on a cell phone'" as places to be searched to be adequately particular because such a requirement of "'a search warrant application . . . places an unrealistic burden on law enforcement and restricts legitimate search objectives, given the storage capacity and file structure of most cell phones.'" Id. (quoting Commonwealth v. Henley, 488 Mass. 95, 116 (2021)).

Thus, the court concluded that Madelon "failed to establish that had a motion to suppress been litigated, it would have been successful" because a "proper reading of the warrant and affidavit indicates that the police could both seize the described digital devices and search them for evidence of child pornography," and the warrant was sufficiently particular. Id. Applying Saferian, the court concluded that Madelon, by failing to show that the motion to suppress should have been filed, did not satisfy Saferian's first prong, as "trial counsel's failure to file a motion to suppress did not amount to ineffective assistance." Id. Given this ruling, the court did not reach the prejudice prong. See id. On December 15, 2022, the Supreme Judicial Court of Massachusetts denied further appellate review. Id. at 3.

7

### C. This Petition

Madelon filed the Petition alleging that his conviction was obtained in violation of his Sixth and Fourteenth Amendment rights to effective counsel. D. 1 at 5; see D. 16 at 6, 21. He contends that he is entitled to relief because the Massachusetts Appeals Court's analysis of his right to effective assistance of counsel claim was an "improper and unreasonable" application of federal law. D. 16 at 6, 17-19. Specifically, Madelon asserts that the Massachusetts Appeals Court erred by failing to recognize the deficient performance of his trial counsel, who failed to move to suppress the evidence obtained from his cell phone. D. 16 at 9-16. According to Madelon, his cell phone was searched pursuant to a warrant that did not authorize the police to search and seize the cell phone data because (1) the affidavit requesting a forensic examination was not incorporated into the warrant and (2) alternatively, even if the affidavit was incorporated into the search warrant, the request for a forensic examination was not sufficiently particular. Id. Thus, Madelon contends that the Massachusetts Appeals Court was incorrect to rule that the warrant allowed the police to search the cell phone for child pornography, and counsel's failure to move to suppress the cell phone evidence had a material effect on the trial. Id. at 16-21.

### IV. Discussion

#### A. Ineffective Assistance of Counsel Standard

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Madelon must show: "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). When a defendant makes an "insufficient showing" on either Strickland prong, "a court deciding an ineffective assistance claim" need not "address both components of the inquiry." Strickland, 466 U.S. at 687.

"The proper standard for attorney performance is that of reasonably effective assistance." Id. at 687. Thus, Madelon must show that, applied to these facts, "no competent attorney would think a motion to suppress would have failed." Premo v. Moore, 562 U.S. 115, 124 (2011); see e.g., Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). The attorney's performance must be evaluated "considering all the circumstances." Strickland, 466 U.S. at 688. Even if Madelon could establish deficient performance of counsel, he must still show that absent trial counsel's failure to move to suppress, "there is a reasonable probability that the result of the proceeding would have been different." Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007)).

When considering the Strickland standard as to a *habeas* petition, the question is not whether counsel's actions were reasonable, but instead whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. That is, "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Id. (citations and internal quotation marks omitted).

### B.      The Massachusetts Appeals Court Did Not Unreasonably Apply Clearly Established Federal Law

Madelon argues that the Massachusetts Appeals Court unreasonably applied clearly established federal law as to his ineffective assistance of counsel claim. D. 16 at 6, 17-19. For the purposes of *habeas* review, "[t]he Strickland standard qualifies as clearly established federal law." Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010). The Massachusetts Appeals Court analyzed the trial court's denial of Madelon's motion for new trial, based on his claim of ineffective assistance of counsel, under Saferian, 366 Mass. at 96. D. 16-1 at 4-5. The First Circuit has established that "the Saferian standard is at least as protective as, and functionally equivalent to, the Strickland standard and that AEDPA deference is appropriate in reviewing Massachusetts

9

decisions applying Saferian." Quintanilla v. Marchilli, 86 F.4th 1, 15 n.14 (1st Cir. 2023); see e.g., Strickland v. Goguen, 3 F.4th 45, 54 n.14 (1st Cir. 2021).

After analyzing whether Madelon's trial counsel should have filed a motion to suppress, the court concluded that Madelon "failed to establish that had a motion to suppress been litigated, it would have been successful." D. 16-1 at 4-5. This Court, applying Strickland, agrees with the Massachusetts Appeals Court's conclusion, and thus the court's application of Saferian, the Massachusetts equivalent of Strickland, was not an "unreasonable application" of clearly established federal law. See 28 U.S.C. § 2254(d)(1).[1]

### 1. There Was No Ineffective Assistance of Counsel

Madelon bases his claim of ineffective assistance of counsel on the contention that his cell phone was searched without a valid warrant and, therefore, his counsel was deficient in failing to file a motion to suppress. D. 16 at 6, 9-16. This Court, as the Massachusetts Appeals Court did, concludes that the search of the cell phone's contents was authorized: the warrant sufficiently incorporated the affidavit, and the warrant, including the incorporated affidavit, requested a sufficiently particular search of the cell phone.

#### a. The Warrant Sufficiently Incorporates the Affidavit

Madelon contends that a motion to suppress would have succeeded because the warrant does not sufficiently incorporate the affidavit. Id. To cross-reference an affidavit, a warrant must

---

[1] Although Madelon briefly references 28 U.S.C. § 2254(d)(1)'s "contrary to . . . clearly established federal law" language in the Petition, D. 16 at 17, he does not identify a Supreme Court case, with facts that are materially indistinguishable from his own, that reached a conclusion different from that of the Massachusetts Appeals Court here, nor has this Court identified such a case. See Malone, 536 F.3d at 63 (explaining that for a *habeas* petitioner's case to "fall under the 'contrary to' category," petitioner must have pointed to, or the reviewing court must have found, a "Supreme Court case reaching a different result than the state court in [the present] case involving materially indistinguishable facts"). Thus, Madelon also is not entitled to relief under this portion of Section 2254(d)(1).

10

expressly use terms of incorporation.  Groh v. Rameriz, 540 U.S. 551, 557-58 (2004).  Language such as "see attached affidavit" suffices as words of incorporation.  Rivera Rodríguez v. Beninato, 469 F.3d 1, 5 (1st Cir. 2006); see Massachusetts v. Shepard, 468 U.S. 981, 990 n.7 (1984); United States v. Burgos-Montes, 786 F.3d 92, 108 (1st Cir. 2015).  Here, the warrant declares, "Proof by affidavit, which is hereby incorporated by reference, has been made this day and [the magistrate judge] finds that there is **PROBABLE CAUSE**…." D. 16-1 at 32 (emphasis in original).  Read either on its face or in a commonsense manner, the warrant uses sufficient words of incorporation to satisfy Groh.  See Rivera Rodríguez, 469 F.3d at 5.

Madelon contends that, under Groh, the affidavit was not fully incorporated because it does not appear that the affidavit was "present on the scene of the execution of the warrant."  D. 16 at 12-13 (referencing Groh, 540 U.S. at 560).  The Supreme Court's concern in Groh was to ensure that the issuing judge had found probable cause for "every item mentioned in the affidavit."  Groh, 540 U.S. at 560.  That was the case here where the face of the warrant, executed by the magistrate, expressly incorporated the affidavit.  Moreover, Vinciulla had "both the warrant and the supporting affidavit to guide the search" at the time of the forensic examination.  D. 16-1 at 5 n.3.  For all of these reasons, the Court concludes that the warrant sufficiently incorporated the affidavit.

> b. *The Warrant, Incorporating the Affidavit, is Sufficiently Particular as to the Forensic Examination*

In the alternative, Madelon contends that even if the warrant does incorporate the affidavit, the affidavit was not sufficiently particular to authorize the forensic examination.  D. 16 at 13-16.  The Fourth Amendment requires a warrant be particular about "the place to be searched" and "the persons or things to be seized."  U.S. Const. amend. IV; see United States v. Grubbs, 547 U.S. 90, 97 (2006).  The particularity requirement's purpose is to prevent general or "wide-ranging exploratory searches that the Framers intended to prohibit."

11

Maryland v. Garrison, 480 U.S. 79, 84 (1987). To satisfy the particularity requirement, the warrant must "particularly describe the place to be searched, and the persons or things to be seized." United States v. Watson, 719 F. Supp. 3d 172, 174 (D. Mass. 2024) (quoting Berger v. New York, 388 U.S. 41, 55 (1967)).

The need for particularity is more acute with cell phones given the amount of highly sensitive and personal information they hold. Riley v. California, 573 U.S. 373, 393-94 (2014) (noting that "[m]odern cell phones . . . implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" because "the possible intrusion on privacy is not physically limited in the same way when it comes to cell phones"); United States v. Wurie, 728 F.3d 1, 8 (1st Cir. 2013) (likening a cell phone to a computer or a home, as opposed to a container with physical limitations to what it can hold).

Here, Madelon does not dispute that the warrant identified child pornography as the specific offense for which there was probable cause to search. D. 16-1 at 32. Madelon, however, does contend that the warrant does not adequately describe the cell phone as a place to be searched, D. 16 at 10-13, but, as this Court concluded above, the warrant adequately incorporates the affidavit, which describes the place to be searched as the "seized electronic device(s) which are believed to contain images or videos that are consistent with Child Pornography." D. 16-1 at 38. To comply with the Fourth Amendment obligation that "searches deemed necessary should be as limited as possible," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971), a warrant must establish some limitation on what evidence can be sought, United States v. Buck, 813 F.2d 588, 591-92 (2d Cir. 1987) (concluding warrant was not particular because it "gave no limitation" on the "kind of evidence sought," despite its description of applicable crime). Conversely, courts have concluded that warrants are particular "if they limit their scope either to evidence of specific

12

federal crimes or to specific types of material." See United States v. Russian, 848 F.3d 1239, 1245 (10th Cir. 2017) (citations and internal quotation marks omitted); see United States v. Triplett, 684 F.3d 500, 505 (5th Cir. 2012) ("findi[ng] limiting guidance" in warrant allowing search of electronic devices where it "inform[ed] the officers that the proper electronic memory devices" to be seized were those "relevant 'to locate [defendant's stepdaughter]'").

The search warrant affidavit references the data search that could apply to a cell phone, with the affiant requesting "that the Court authorize[] the subsequent forensic examination, to include a preliminary on-site exam, of any seized electronic device(s) which are believed to contain images or videos that are consistent with Child Pornography." D. 16-1 at 38. Madelon claims that the affidavit "asked only generally for a forensic audit, and there is no assurance that a magistrate would conclude the scant level of detail appropriately constrained the data search." D. 16 at 13. This Court disagrees.

While the request for the forensic search did not list specific types of material that the affiant sought to seize from the cell phone, the warrant did reference the relevant crime as a limiting principle. D. 16-1 at 32, 36-38. Here, the warrant itself authorized the search for and seizure of "[c]ell phones . . . that contain evidence of Child Pornography." D. 16-1 at 32. The incorporated affidavit further constrained the forensic search and seizure to devices "believed to contain the images or videos . . . consistent with Child Pornography." Id. at 38. Reading the incorporated affidavit in a commonsense manner, see Ventresca, 380 U.S. at 109, it is logical that the affiant intended that the executing officer(s) would search the phone for images and videos of child pornography, see D. 16-1 at 38. While the request does not limit where on the phone the officers could search, there is nothing to suggest that the officers would have had the information necessary to identify where such images and videos would be found, and "[a] warrant need not be more

13

specific than knowledge allows." United States v. Bishop, 910 F.3d 335, 338 (7th Cir. 2018). For all of these reasons, the warrant was sufficiently particular to authorize the search and seizure of the contents of Madelon's cell phone for child pornography.

Given that the warrant particularly identified the place to be searched and the items to be seized, it cannot be said that Madelon's attorney's performance was deficient for failing to bring a futile motion, see Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999). Accordingly, Madelon's claim of ineffective assistance of counsel fails here on the first prong of Strickland.

### 2.    *Madelon Cannot Succeed on the Prejudice Prong Under Strickland*

Even assuming *arguendo* that Madelon had satisfied the first prong of Strickland, he has also failed to satisfy the second prong of Strickland, which requires a showing that counsel's deficient performance prejudiced him, creating a reasonable probability that the outcome at trial would have been different. Yeboah-Sefah, 556 F.3d at 70. Given its conclusion that Madelon had failed to show deficient performance by trial counsel, the Massachusetts Appeals Court did not reach the prejudice prong in its analysis. See id.

As to this second prong of Strickland, Madelon has the burden to "affirmatively prove prejudice." Strickland, 466 U.S. at 693. The proper prejudice test is whether, due to counsel's error, it is "reasonably likely" that the result would have been different. Harrington, 562 U.S. at 111. A mere "conceivable effect on the outcome of the proceeding" is not enough. Strickland, 466 U.S. at 693. Instead, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; United States v. Messner, 37 F.4th 736, 741 (1st Cir. 2022) (quoting Strickland, 466 U.S. at 694).

Madelon contends that the videos and images were "foundational to the trial," during which the prosecution showed the extracted videos and images and Madelon was "forced to explain away the video evidence." D. 16 at 20-21. Madelon argues that had his trial counsel moved to suppress the cell phone contents and had been successful in doing so, "the focus on his examination would have been much different, and it is impossible to say that the jury's assessment of his credibility was unaffected by the evidence." Id. at 21. However, the videos and images were offered with the victim's overall testimony about the recording and assault incidents elicited through the prosecution and defense examinations: the prosecution asked the victim to describe the events captured in those images and videos and provide context for them. See D. 21-4 at 33-34, 36-51, 55-73. Given the totality of evidence offered at trial, Madelon has not fulfilled his affirmative burden to show that, absent his counsel's failure to have the images and videos from his cellphone suppressed, the jury would have had a reasonable doubt of his guilt. See Strickland, 466 U.S. at 695. Accordingly, even assuming *arguendo* that he had shown that his trial counsel's performance was ineffective by failing to file a motion to suppress the contents of his cell phone, that such deficient performance prejudiced him.

### V.    Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 1. A petitioner may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion denying

the Petition debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability but will give Madelon until November 28, 2025 to file a memorandum if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

    **So Ordered.**

/s Denise J. Casper
Chief United States District Judge
